UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BAYKEEPER INC., et al.,

                          Plaintiffs,

           - against -

SHINNECOCK BAYKEEPER, INC., et al.,

                          Defendants.
-----------------------------------------------------------X

**MEMORANDUM & ORDER**
05-CV-4467 (NGG)(JO)

On January 18, 2005, Magistrate Judge James Orenstein issued a Report and Recommendation ("R&R") recommending that this court grant the motions of Defendants First Coastal Corporation ("First Coastal") and Aram Terchunian ("Terchunian") (collectively "Defendants") to vacate the Clerk's notations of default entered against them in the above-referenced matter. The plaintiffs submitted a timely statement of objections to the R&R, thereby requiring this court to make a *de novo* review of all portions of the R&R to which the plaintiffs specifically objected. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Having so reviewed Judge Orenstein's R&R, I adopt his recommendations in their entirety for the reasons set forth below and grant the Defendants motion to vacate the entry of default.

**I.    Background**

    **A.    Factual Allegations**

The Plaintiffs in this matter, Baykeeper, Inc. ("Baykeeper"), Waterkeeper Alliance, Inc. ("Waterkeeper"), and Peconic Baykeeper, Inc. ("Peconic") filed a complaint on September 30, 2005 alleging trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051 <u>et seq.</u>, and New York trademark law in connection with the alleged infringement

1

of plaintiffs' registered trademark and service mark BAYKEEPER®, and for copyright infringement in violation of 17 U.S.C. § 501, et seq., in connection with the alleged unauthorized copying of Peconic's website. (Plaintiff's Complaint ("Compl.") ¶ 1).

Baykeeper and Peconic are both not-for-profit organizations that provide "environmental advocacy and educational services aimed at protecting the nation's waters" and specifically the South Shore Estuaries of Long Island. (Compl. ¶ 2). Baykeeper and Peconic are both part of Waterkeeper Alliance, a grassroots alliance of more than 125 organizations dedicated to "preserving and protecting waterways from pollution." (Id. ¶ 3). On behalf of Baykeeper, Waterkeeper oversees the administration of trademark licenses to use BAYKEEPER®. (Id. ¶ 3). Peconic has had a license to use the mark PECONIC BAYKEEPER since at least 1997 and is the only organization licensed to use the BAYKEEPER mark in connection with the South Shore Estuary, which includes Shinnecock Bay. (Id. ¶ 3).

The Plaintiffs allege that the Defendants are owners of, or are affiliated with a restaurant located in Shinnecock Bay. This restaurant has proposed a "large-scale marina development" project, to which Peconic is opposed because of the potential negative effects such a project will have on the ecosystem of Shinnecock Bay. (Id. ¶ 4). The Plaintiffs allege that the Defendants have illegally used the BAYKEEPER mark for activities related to this development project. (Id. ¶ 5). In addition, Plaintiffs allege that Defendants are using the mark SHINNECOCK BAYKEEPER by incorporating a not-for-profit organization of that name purported to support the ecology of the Shinnecock Bay waters. (Id. ¶ 7). Plaintiffs also allege that Defendant Terchunian, who heads First Coastal, has purchased several internet domains that incorporate the term "Shinnecock Baykeeper" in their domain names and that resemble Peconic's website in

2

such a way that is confusingly similar and discredits the BAYKEEPER mark. (Id. ¶¶ 6-7). Plaintiffs allege that Defendants' use of the SHINNECOCK BAYKEEPER mark constitutes trademark infringement, unfair competition, and copyright infringement in violation of federal and state laws.

### B. Procedural History

The initial complaint was filed against six named defendants, all of whom failed to answer. Motions for Entry of Default were filed by the Plaintiffs against First Coastal and Terchunian on November 1 and 2, 2005, respectively. (See Docket Entries ("DE") 9, 11). The Clerk of the Court entered Notations of Default against both for failure to answer the complaint on November 10, 2005. (DE 13, 14). On November 18, 2005, Attorney Joseph Prokop informed the court by letter that he would be representing the Defendants in this matter and that he requested an extension of time to file answers on behalf of the four remaining defendants who had not yet had Notations of Default entered against them. (DE 17). Prokop explained that the request was based on the fact that he had just recently been retained as counsel for the Defendants. He further explained that the Defendants had initially planned to defend themselves on a pro se basis and that they had in fact filed a timely request for an extension to answer on October 26, 2005.[1] He attached to his letter a copy of the October 26, 2005 letter to the court from Defendant Larry Hoffman on behalf of all Defendants indicating Defendants' need to find

---

[1] Although Defendants' counsel indicated that this was a "timely" request for an extension, in fact it was not. The Summons and Complaint was served on First Coastal and Terchunian on September 28, 2005, and the answer accordingly was due twenty days later on October 18, 2005. The Defendants' letter request was therefore not timely. Additionally, I note for the record, as Judge Orenstein did in his R&R, that for an inexplicable reason, the October 26, 2005 letter to the court from Larry Hoffman and the other defendants was not docketed on ECF until it was attached to Prokop's November 18, 2005 letter to the court. (See R&R at 3-4).

3

counsel for representation and requesting additional time to answer the complaint. (DE 17). Prokop also informed the court in his November 18, 2005 letter that he would be moving separately to vacate the defaults entered against First Coastal and Terchunian. As to the remaining Defendants, Judge Orenstein exercised his discretion to order an extension of time in which to answer pursuant to Fed. R. Civ. P. 6(b)(2) and granted the Defendants' requests for extensions of time to file answers by Order dated October 29, 2005. (DE 19).

With respect to the Notations of Default entered against First Coastal and Terchunian, Propkop filed motions to vacate on December 9, 2005. (DE 27, 28). I referred those motion to Judge Orenstein for a Report and Recommendation. (DE 29).

### C. Judge Orenstein's R&R

Judge Orenstein concluded that the Defendants had made a proper showing of "good cause" to justify the setting aside of an entry of default pursuant to Fed. R. Civ. P. 55(c). Judge Orenstein properly considered the following: (1) whether the default was willful; (2) whether the defendants have a meritorious defense; and (3) whether the plaintiffs would be prejudiced if the entry of default was set aside. See Brien v. Kullman Indus., Inc., 71 F.3d 1073, 1077 (2d Cir. 1995).

With respect to the willfulness of the default, Judge Orenstein concluded that the Defendants' default could not be deemed willful inasmuch as the record reflected that the Defendants "made several attempts to secure an extension of time to respond, and that their failure to secure such relief is largely attributable to their lack of counsel." (R&R at 6). Orenstein also found that he was unable to determine on the record before him that the Defendants would be unable to mount a meritorious defense. (Id.). Specifically, Judge Orenstein

4

found that they had put forth a meritorious defense that the plaintiffs may have sued the wrong defendants and that the plaintiffs might be barred from bringing suit due to a previous proceeding. (Id.). Finally, on the question of prejudice, Judge Orenstein found that based on the record, Plaintiffs would suffer "no cognizable prejudice" by any delay that would result in vacating the entries of default.[2] (Id. at 7). For these reasons, Judge Orenstein recommended that this court grant Defendants' motion to vacate the Clerk's notations of default. (Id.).

### D.  Plaintiffs' Objections to the R&R

The Plaintiffs raise four objections to the R&R. (See DE 43, Plaintiffs' Objections to R&R ("Pls. Obj.")). First, the Plaintiffs maintain that Judge Orenstein based his conclusion that the Defendants did not willfully default on a "misreading of the undisputed factual record." (Pls. Obj. at 2). Specifically, the Plaintiffs allege that Defendants made "no attempt whatsoever" to reach Plaintiffs' counsel to seek an extension of time to answer until after their twenty day period to do so expired on October 18, 2005. Thus, the Plaintiffs contend that there is no factual basis to support the R&R's determination of no willful default. (Id. at 2-3).

Second, Plaintiffs contend that Judge Orenstein made a legal error in that he applied the wrong standard in analyzing the willfulness element. Specifically, Plaintiffs maintain that the R&R rested on case law which they assert "has been effectively superseded and no longer reflects authoritative Second Circuit law." (Id. at 2-3). In the R&R, Judge Orenstein wrote the following:

> Willfulness is subjective; conduct that is merely careless or negligent, such as a

---

[2] The Plaintiffs have not objected to the R&R's finding that Plaintiffs will suffer no cognizable prejudice by setting aside the notations of default, and thus this M&O will not review that finding.

5

> filing error, is not willful. American Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d
> 57, 61 (2d Cir. 1996). On the other hand, strategic decisions to default,
> unexplained failure to respond to a summary judgment motion, or "flimsy"
> reasons given for failure to comply with scheduling orders have been found to be
> willful. Id. at 60-61 (citing cases); SEC v. McNulty, 137 F.3d 732, 738 (2d Cir.
> 1998) (citing cases). On the current record I cannot find the defendants' default
> was willful. Indeed, the record suggests that the defendants made several attempts
> to secure an extension of time to respond, and that their failure to secure such
> relief is largely attributable to their lack of counsel.

(R&R at 6). Plaintiffs argue that the Second Circuit's opinion in Gucci America, Inc. v. Gold Center Jewelry, Inc., 158 F.3d 631 (2d Cir. 1998), effectively overruled the two cases relied upon by Judge Orenstein, American Alliance and SEC v. McNulty, and therefore cannot support his conclusion.

Finally, Plaintiffs object to the R&R's determination that Defendants adequately presented meritorious defenses. Plaintiffs assert that the prior decision in another proceeding that was referenced in the R&R (a decision of the National Arbitration Forum) "provides no basis whatsoever for barring Plaintiff's present lawsuit," and that there have been no facts offered on the record to suggest that the Plaintiffs may have sued the wrong parties, as Judge Orenstein found. (Pls. Obj. at 4-5).

Each of the Plaintiffs' objections will be considered in turn.

## II. Discussion

### A. Finding of non-willfulness

From the record, I conclude the following. Defendants First Coastal and Terchunian were served with the summons and complaint in this matter on September 28, 2005, and their answers were due by October 18, 2005. (See DE 3, 4). Defendants Larry Hoffman and Shinnecock

6

Baykeeper, Inc. were served on October 6, 2005, with answers due on October 26, 2005. (See DE 5, 6). And finally, the remaining two defendants, LRJ Management Corporation and 94 Dune Road Holding Corporation, were served on October 19, 2005, with answers due on November 8, 2005. (See DE 7, 8). The defendants, collectively, initially decided to proceed pro se and on October 26, 2005, Larry Hoffman, on behalf of all of the defendants, wrote to the court explaining that the Defendants as a group were having trouble finding representation and requested an extension of time to answer the complaint. Notably, Hoffman's answer was not due until that date, October 26, 2005. Hoffman also explained in that letter that the defendants had tried to request such an extension informally from Plaintiffs' counsel, but had failed to do so.

I begin by noting that "[r]elief from default under [Fed. R. Civ. P.] 55(c) is to be granted at the discretion of the court upon consideration of the individual circumstances of the case and the credibility and good faith of the parties." Weisel v. Pischel, 197 F.R.D. 231, 238 (E.D.N.Y. 2000) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir.1993)). The above-stated facts strongly suggest that neither First Coastal nor Terchunian willfully defaulted. Though it may be true that the Defendants first formally communicated with the court to request an extension after the date on which their answer was due, given the circumstances, particularly that other named defendants' answers were not yet due and the Defendants had no representation at the time, this cannot be deemed willful default. I agree with Judge Orenstein's conclusion that the record suggests that the Defendants attempted to secure and extension of time to respond and that their inability to do so was primarily due to lack of counsel. (See R&R at 6).

With respect to the legal analysis on wilfull default, I find that the R&R employed the correct legal standard and I adopt Judge Orenstein's conclusion. In American Alliance Insurance

7

Co. v. Eagle Insurance Co., the Second Circuit found that a filing mistake that went unnoticed for two months and ultimately led to imposition of a default judgment may have been "grossly negligent" but was not willfull, deliberate, or evidence of bad faith and thus could not support a finding of willful default. American Allicance, 92 F.3d at 61-62. In SEC v. McNulty, the Circuit Court affirmed the denial of a motion to vacate where the facts showed that the Defendant's lawyer was reminded several times over a period of several months of his obligation to answer a complaint and was warned several times that he would face default judgment if he failed to do so. The lawyer had also in fact sought extensions on the time to answer himself, but nonetheless failed to answer in any sort of timely fashion. The default was entered almost a full year after the summons and complaint were issued. McNulty, 137 F.3d at 734-5. On these facts, the McNulty court held that there could be "no question" that the neglect was not excusable and that the default was willful. Id. at 739.

Finally, in Gucci America, Inc. v. Gold Center Jewelry, the Second Circuit explicitly held that a showing of bad faith is not required for a finding of willful default. Gucci, 158 F.3d at 634. In Gucci, the court explained that it believed that the district court – which had held that there was no willful default because there was no proof of bad faith – "appear[ed] to have misinterpreted our decision in American Alliance." Id. Specifically, the Gucci court explained that though it had made a distinction in American Alliance between a case of mere negligence and one where there is a showing of bad faith, the court had not intended in American Alliance to suggest that bad faith is required to support a finding of willful default. Id. at 635. The court concluded the following in Gucci: "[W]hile a determination that the defendant acted in bad faith would certainly support a finding of 'willfulness,' it is sufficient that the defendant defaulted

8

deliberately." Id.

The Plaintiffs' objections to the contrary notwithstanding, the Gucci decision did not overrule or diminish the precedential value of American Alliance or SEC, and Judge Orenstein properly relied on the legal principles they espouse. Although First Coastal and Terchunian were aware of the complaints filed against them, the facts show that their subsequent defaults were not willful. They did not deliberately ignore the complaints, but rather attempted to obtain extensions of time in which to answer and to seek counsel to represent them. Their inability to do so until several days after their answers were due cannot be deemed willful default.

### B. Finding of meritorious defense

The Plaintiffs also contend that the R&R improperly concluded that the Defendants satisfied the "meritorious defense" element of the good cause analysis. See Kullman, 71 F.3d at 1077. To satisfy this criterion, "the defense need not be ultimately persuasive at this stage. 'A defense is meritorious if it is good at law so as to give the factfinder some determination to make." American Alliance, 92 F.3d at 61 (quoting Anilina Fabrique v. Aakash Chemicals & Dyestuffss, Inc., 856 F.2d 873, 879 (7th Cir. 1988)). Although it is true that a defendant seeking to vacate a default judgment "need not conclusively establish the validity of the defense(s) asserted," Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983), it is equally true that the "moving party on a motion to reopen a default must support its general denials with some underlying facts." Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 320-21 (2d Cir. 1986).

In the R&R, Judge Orenstein simply stated that "the defendants have presented meritorious defenses: namely, that the plaintiffs have sued the wrong defendants and that the plaintiffs may be barred from bringing this claim as a result of a previous proceeding." (R&R at

6). I find Judge Orenstein's reasoning and analysis to be wanting; however, for different reasons I come to the same conclusion.

To show that the Plaintiffs may be barred from bringing this suit as a result of an earlier proceeding, the Defendants submitted a copy of a National Arbitration Forum decision in a dispute between the Plaintiffs (Complainants) and LRJ Management and Larry Hoffman (Respondent), two of the other named defendants in the instant action. That arbitration addressed the Respondent's use of domain names and websites alleged to infringe on the trademark of the Complainants (i.e. the BAYKEEPER mark). The arbitrator determined that the Complainant had failed to establish any infringement and denied the Complainants' request to have the Respondent's domain names transferred to the Complainant.

In the present matter, the Defendants appear to assert that this Arbitration decision may have a res judicata effect on the Plaintiffs' action against them. Although I have not extensively examined the merits of such a defense, it seems plain that this Arbitration decision – to which neither First Coastal nor Terchunian were parties – would not have such an effect. Thus I cannot agree with Judge Orenstein's conclusion that this presents a meritorious defense. I am also unpersuaded by Judge Orenstein's determination that Plaintiffs may have "sued the wrong defendants." (R&R at 6). I find nothing in the record to support such a finding.

Nonetheless, I find that the meritorious defense element is satisfied. In Defendants' Reply to the Plaintiffs' Objections to the R&R, submitted to the court on February 13, 2006, Defendants attached as an exhibit a "proposed answer" to the complaint, which is in the form of an Answer already submitted by other defendants in this matter. (DE 45, Ex. 1). Defendants' counsel avers that the affirmative defenses pleaded in the answer are available to and will be

pleaded as well by First Coastal and Terchunian. These defenses include the statute of limitations, lack of personal jurisdiction due to lack of service of process, and laches, among others.

When considering the meritorious defense element in a good cause analysis for vacatur of entry of default, "[l]ikelihood of success is not the measure." Weisel v. Pischel, 197 F.R.D. 231, 239 (E.D.N.Y. 2000). Rather, " allegations are meritorious if they contain even a hint of a suggestion which, if proven at trial, would constitute a complete defense." Id. (internal quotation marks and citation omitted). By this standard, I find that the Defendants have raised a meritorious defense. I therefore conclude that the objections to the R&R raised by Plaintiff do not merit a different decision, and I adopt Judge Orenstein's recommendation to vacate the Notations of Default entered against the Defendants.

I note as well that my decision is supported by the fact that the Plaintiffs will suffer no prejudice by the delay which has been caused as a result of the defaults entered in light of the fact that the there are four other defendants in this matter who have either only recently answered the complaint or have not even done so yet. Moreover, in addition to considering the factors of willfulness, meritorious defense, and prejudice on a motion to reopen a default judgment, "[o]ther equitable factors [ ] may be considered includ[ing] whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about an unfair result." Id. In the present case, I find that equity will be served by vacating the defaults. Moreover, there is an established preference in this circuit for district courts "to resolve any doubts regarding vacatur of a default in favor of a trial on the merits." See Shah v. N.Y. State Dept. of Civil Serv., 168 F.3d 610, 615 (2d Cir.1999); Enron Oil Corp., 10 F.3d at 95. For

all of the aforementioned reasons, I adopt Judge Orenstein's R&R.

## III. Conclusion

I hereby GRANT the motions of Defendants' motions to vacate the Notations of Default entered against them by the Clerk of the Court on November 10, 2005. The Defendants First Coastal and Aram Terchunian are granted ten days from the entry of this Order to file an answer or otherwise respond to the complaint.


SO ORDERED.

Dated: February 22, 2006.             /s/
      Brooklyn, N.Y.              Nicholas G. Garaufis
                                               United States District Judge